FLOR DE MARÍA MONSERRATE, Plaintiff and Appellant, *v.* ELÍAS G. LOPÉS ET AL., Defendants and Appellees.

No. 11553.  Submitted June 11, 1956.—Decided June 20, 1958.

*Rafael B. Pérez Mercado* and *Benjamín Rodríguez Ramón* for appellant. *Quirós Méndez & Quirós Méndez* for codefendant and appellee Mr. Ball, Jr. *Antonio J. Amadeo,* guardian *ad litem,* for plaintiff and appellee Mr. Lopés.

Mr. Justice Belaval delivered the opinion of the Court.

By public deed No. 34, executed before notary Octavio Jiménez on July 22, 1949, Flor de María Monserrate sold to Elías G. Lopés, married to Zenaida García, a certain urban property for $20,000. Out of this sum the purchaser withheld $5,085.81 to pay off a mortgage which encumbered the property, and the remainder of the sales price *was admittedly received by the vendor from the purchaser prior to the date of execution.* By public deed No. 35, executed before notary Octavio Jiménez on July 23, 1949, Elías G. Lopés, in his own right and as attorney in fact for his wife, Zenaida García, sold the same property to Carlos H. Ball, Jr. for $13,085.81, of which the purchaser withheld $5,085.81 to pay off the mortgage that encumbered the property, and the remainder of the price, that is, $8,000, was delivered by the purchaser to the vendors at the time of the execution. There is evidence to the effect that the Government had appraised this property at $10,280, and that César Cordero, an expert appointed by Carlos H. Ball, Jr. to advise him in the second sale, appraised it at $14,000 (Tr. Evid. I. 53–55; I. I. 66).

It was not until September 6, 1949, that deed No. 35, by which Carlos H. Ball, Jr., acquired the property, was

presented in the Registry of Property of Río Piedras. Upon noticing that the property on that date appeared to have been recorded in the name of Flor de María Monserrate, on October 5, 1949, the Registrar of Río Piedras refused to record the sale in favor of Ball, Jr., entering instead a cautionary notice (Tr. Evid. I. 170–71).

On September 8, 1949, deed No. 34, by virtue of which Elías G. Lopés acquired the property from Flor de María Monserrate, was presented in the Registry of Property of Río Piedras, and it was recorded in the name of Elías G. Lopés on October 5, 1949 (Tr. Evid. I. 171–72).

On October 26, 1949, an application for notice of lis pendens accompanied by copy of a complaint was presented in the Registry of Property of Río Piedras. In said complaint the court was urged to declare null deeds Nos. 34 and 35 authorized by notary Octavio Jiménez, on the ground that, as to deed No. 34, no money was delivered for the said conveyance, and, as to deed No. 35, the sale was executed in fraud of creditors; the purchaser, Carlos H. Ball, Jr., was aware of the nullity and defects of the alleged sale made by the plaintiff, Flor de María Monserrate, to codefendant Elías G. Lopés; on the date of the latter deed, codefendant Elías G. Lopés was insolvent, a fact known to the defendant, Carlos H. Ball, Jr.; and this transaction was part of a series of fraudulent operations of which Carlos H. Ball, Jr. had knowledge and in which he had participated (Tr. Evid. I. 172; J. R. 1–2). The said notice of lis pendens was recorded on November 25, 1949.

On November 2, 1949, a request for conversion of cautionary notice was presented in the Registry of Property of Río Piedras, accompanied by deed No. 35, whereby Elías G. Lopés, in his own right and as attorney in fact for his wife, Zenaida García, sold to Carlos H. Ball, Jr. the property they had acquired from Flor de María Monserrate. This request for conversion was recorded on November 29, 1949, subject,

however, to the notice of lis pendens referred to in the preceding paragraph (Tr. Evid. 172–73).

1. Regarding the complaint of nullity for lack of consideration, the picture presented by the evidence is as follows: (1) As to deed No. 34, the plaintiff, Flor de María Monserrate, had not received any money from Lopés and his wife prior to its execution; nor did it appear that Flor de María Monserrate was a debtor of Lopés on account of any obligation contracted in his favor, and, on the contrary, Lopés was a debtor of Flor de María Monserrate, as evidenced by plaintiff's Exhibit III, which copied verbatim reads as follows:

August 30, 1949

Mrs. Flor de María Monserrate
Calle K 69, Urb. Eleanor Roosevelt
Hato Rey, Puerto Rico.

Dear Madam:
Allow me to tell you that, even if you should hear that I am not in my office or that I have left, you as well as your mother, your aunt, and Mr. Ginorio may rest assured that my obligations toward you still stand, no matter whether I am closer to or farther from you.

There was a sudden crisis in my business, caused by some persons who have business dealings with me but whose moral standards and sense of humanity are so low that they threatened to ruin the whole business and even to do away with me. But I hasten to beg you, so that you in turn advise those whom I already named, to have full confidence in me, and that, even if I may not be able to fulfill promptly my obligations to you on the date and in the amount I promised to pay, *do not doubt for a moment* that my decision to be far away from my office is, above all, to live for those who, like you, deserve it and to prevent some merciless persons from ruining a business to which I have devoted my lifetime and even my own life.

I beg you to have *full faith* in what I say here and you will shortly hear from me again.

*Do not despair. Do not write to me.* (The address on the envelope is neither legitimate nor correct.)

With kindest regards, I remain

Very truly yours,

(s) Elías G. Lopés.

N.B.: Since I do not intend to write to any one except to those who, like you, deserve it and are doing business with me for the first time, please do not mention this letter to anyone. (Tr. Evid. II. 66–67.)

2. Regarding deed No. 35, there is no question that the sale which Lopés made to Carlos H. Ball, Jr. was a fraudulent sale of a property which did not belong to the vendor, since he had not paid the price thereof to the previous vendor, Flor de María Monserrate; and, according to the foregoing letter, there seem to be other creditors, although not deserving any explanation from Lopés as to his strange disappearance, as it appears from the note or postcript at the end of the letter. There is evidence of other operations, similar to that carried out with the plaintiff, which we shall examine later (Tr. Evid. I. 168–97; I. II. 31 *et seq.*).

3. Regarding deed No. 35 and the knowledge which Carlos H. Ball, Jr. may have had of the nullity and defects of the alleged sale between Flor de María Monserrate and Lopés, the plaintiff testified that Lopés called on her on several occasions before the alleged sale was executed, accompanied by other persons, "almost always he was accompanied by someone, usually Arístides Lube and Ball at other times" (I. II. 61). There is no question that engineer Cordero's assessment of the property at the request of Ball, Jr., was made prior to the sale between Flor de María Monserrate and Lopés, since the sale between them was executed on July 22 and the sale between Lopés and Carlos H. Ball, Jr. was executed on the following day, July 23, and on those dates the assessment had already been made. One of the witnesses to this deed is Arístides Lube Sierra, who was mentioned in

the testimony of Flor de María Monserrate on this point (Tr. Evid. II. 24).

4. Regarding deed No. 35 and the state of insolvency of Elías G. Lopés, the latter's second letter to Flor de María Monserrate—Exhibit III-A of plaintiff (Tr. Evid. II. 69)— makes clearer his difficult condition. That letter reads as follows:

Sept. 7, 1949.

Mrs. Flor de María Monserrate
Urb. Eleanor Roosevelt K-69
Hato Rey, Puerto Rico.
Dear Flor María:

Greetings!

Once again I wish by this means to reassure you. Although I am not near you, I do not for a moment forget the *pressing obligations I have contracted with you, your mother, your aunt, Ginorio, and other worthy and decent persons who have placed their trust in me.* The confusion which my absence caused and is causing will be vanished when I meet those obligations, even if not at the time and in the amount agreed upon.

As I requested in my previous letter, please do not answer to the address shown on the envelope nor discuss this letter with anyone, except with those persons who through you placed their confidence in me.

Thanks for everything.

Very truly yours,

(s) Elías G. Lopés.

(Italics ours.)

Nothing in the evidence indicates that Lopés was solvent. On the contrary, the evidence shows that the capital with which Lopés did business came from certain properties which certain unwary persons transferred to him, and which he in turn transferred again for the purpose of raising funds. Such evidence was in no way controverted.

5. Regarding deed No. 35 and the possibility that this deed might form part of a series of fraudulent operations

of which Carlos H. Ball, Jr. had knowledge and in which he had participated, there is documentary evidence to establish this fact. Let us see.

A. Deed No. 9 was executed on January 29, 1949, before notary José A. Varona Pacheco, whereby Leyda Nazario Rivera sold to Elías G. Lopés, married to Zenaida García, a lot and house on San Mateo Street for twelve thousand dollars, of which the purchasers *delivered at the time of the execution the sum of two thousand dollars,* and withheld the remaining ten thousand dollars to pay off the mortgage that encumbered the said property. This deed *was presented in the Registry of Property of San Juan on February 8, 1949, and was recorded on February 9, 1949* (Tr. Evid. I. 188–89). (Italics ours.)

Deed No. 11 was executed on February 5, 1949, before notary José A. Varona Pacheco, whereby Elías G. Lopés and his wife, Zenaida García, sold to Carlos H. Ball, Jr., with right of redemption for one year, the lot and house situated on San Mateo Street for sixteen thousand dollars, of which the *vendors admittedly received prior to the execution the sum of six thousand dollars,* and the purchaser withheld the remaining ten thousand dollars to pay off the mortgage that encumbered the said property. This deed *was presented in the Registry of Property of San Juan on February 8, 1949 and was recorded on February 9, 1949* (Tr. Evid. I. 191–93). (Italics ours.)

B. Deed No. 15 was executed on March 15, 1949, before notary José A. Varona Pacheco, whereby Luis Bayó Deriberprey sold to Elías G. Lopés and his wife, Zenaida García, a lot and house situated in Urbanización Dávila y Llenza of Hato Rey for fifteen thousand two hundred and fifty dollars, which *the vendor admittedly received prior to the execution of the deed. This deed was presented in the Registry of Property of Río Piedras on August 22, 1949,* and was recorded on October 5, 1949 (Tr. Evid. II. 204–05). (Italics ours.)

Deed No. 16 was executed on the same day of March 15, 1949, before notary José A. Varona Pacheco, whereby Elías G. Lopés and Zenaida García sold to Carlos H. Ball, Jr., with right of redemption for one year, the same lots and house situated in Urbanización Dávila y Llenza for ten thousand dollars, *which the vendor admittedly received prior to the execution of the deed. This deed was presented in the Registry of Property of Río Piedras on August 23, 1949,* and was recorded on October 5, 1949 (Tr. Evid. II. 205–07). (Italics ours.)

Deed No. 38 was executed on August 13, 1949, before notary Adolfo Mieres Calimano, whereby Elías G. Lopés, in his own right and as attorney in fact for his wife, Zenaida García, mortgaged to Carmen Riefkohl for $7,000 *the lot and house in Urbanización Dávila y Llenza which he had already sold* to Carlos H. Ball, Jr., for a period of one year, with interest at 8 per cent per annum. *This deed was presented in the Registry of Property of Río Piedras on August 18, 1949,* and its recording was originally refused on October 3, 1949 on the ground that the property was still recorded in favor of Luis Bayó Deriberprey.

C. Deed No. 27 was executed on June 27, 1949, before notary José A. Varona Pacheco, whereby Carmen Torres Córdova sold to Elías G. Lopés, married to Zenaida García, a lot and house situated in Santurce for twenty-five thousand dollars, which *the vendor admitted having received prior to the execution of the deed.* This deed was presented in the Registry of Property of San Juan on July 13, 1949, and recorded on July 19, 1949 (Tr. Evid. I. 186). (Italics ours.)

Deed No. 30 was executed on July 12, 1949, before notary José A. Varona Pacheco, whereby Elías G. Lopés, in his own right and as attorney in fact for his wife, sold the same property to Carlos H. Ball, Jr. for nine thousand dollars, *which he received prior to the execution of the deed. This deed was presented in the Registry of Property of San Juan*

*on August 23, 1949,* and recorded on August 31, 1949 (Tr. Evid. I. 187). (Italics ours.)

D. The fourth operation transacted by deed is between the plaintiff, Flor de María Monserrate, and Elías G. Lopés and between the latter and Carlos H. Ball, Jr., which is the subject matter of this action and which we have recited above.

Each of the first three operations was the object of much litigation of nullity of which the Registry of Property took notice through proper notices of lis pendens, which we have not recited at length because we are only urged to take cognizance of a fraudulent transaction between Lopés and Carlos H. Ball, Jr. intended to defeat any juridical effect of a third party.

It clearly appears from the evidence that the first purchaser was Lopés, and that on the following day, or a few days later, Carlos H. Ball, Jr. purchased the same property; that the notaries authorizing these operations were procured and paid by Lopés; that Carlos H. Ball, Jr. did not intervene in the investigation of the titles in the Registry of Property (T. II. 44); that the four sales in question were not executed in the ordinary course of juridical business; that Lopés did not pay any price for them; that although in the sale made by Mrs. Nazario the notary attests to the fact that Lopés delivered to her two thousand dollars in the presence of that officer, Mrs. Nazario denied the fact of the delivery and her assertion was not contradicted (T. I. 16–18); that the titles were not timely presented in the Registry of Property; that after Lopés sold to Carlos H. Ball, Jr. the house and lot which the former had acquired from Luis Bayó Deriberprey, Lopés himself appears mortgaging the same to Carmen Riefkohl; that Lopés made two of these sales to Ball with right of redemption, and the remaining two for a selling price that was wholly inadequate.

This entire deal merely reveals a series of loan contracts made by Carlos H. Ball, Jr. to Lopés for the simulated selling price, guaranteed by certain properties allegedly belonging to Lopés, or, at the most, a manipulation to create a "mechanical third party," for the corresponding registration purposes, in the event the true owners claimed their properties thereafter. This explains why, in the operation between Lopés and Flor de María Monserrate carried out on July 22, 1949, the latter sells to Lopés a certain urban property for the sum of $20,000, and the next day, July 23, 1949, Lopés sells the same property to Carlos H. Ball, Jr. for $13,085.81; why in the first sale the price was admittedly received prior to the date of the execution—presumption of conveyance without consideration; and in the second sale the same property is sold for a wholly inadequate price—presumption of false or illicit consideration. Yet, the evidence for the defendants makes no attempt to overcome these presumptions, the juridical effects of which are strengthened by the evidence on Lopés' insolvency and the evidence introduced by the plaintiff on the concerted action between Lopés and Carlos H. Ball, Jr. in this as well as in other operations. Although there is a legal presumption in favor of the veracity of the facts set forth in a public deed, such presumption is not conclusive and may be overcome by proper evidence of facts contrary to those set forth in the said deed. *Vázquez* v. *Zeda,* 58 P.R.R. 597, 602 (Travieso) (1941).

The following sections of the Civil Code of Puerto Rico constitute the applicable law in this case: There is no contract unless the following requisites exist: 1. The consent of the contracting parties; 2. A definite object which may be the subject of the contract; 3. The cause for the obligation which may be established— § 1213 (31 L.P.R.A. § 3391, p. 126); in contracts involving a valuable consideration, the prestation or promise of a thing or services by the other party is understood as a consideration for each contracting party; in remuneratory contracts, the service or

benefits remunerated, and in those of pure beneficence, the mere liberality of the benefactor—§ 1226 (31 L.P.R.A. § 3431, p. 139); contracts without consideration or with an illicit one have no effect whatsoever—§ 1227 (31 L.P.R.A. § 3432, p. 142); *the statement of a false consideration in contracts shall render them void,* unless it be proven that they were based on another real and licit one—§ 1228 (31 L.P.R.A. § 3433, p. 143). (Italics ours.)

It is clear that we have before us a plain case of absolute or radical nullity of a contract of sale for lack of consideration, absence of price, and lack of juridical effects as to its transmissibility. *Guzmán* v. *Guzmán; Rodríguez, Int.,* 78 P.R.R. 640, 644 (1955). The fact that a person who is undoubtedly guilty of the cause of the nullity of the contract requests its annulment should not stand in the way of our reasoning. In his treatise on the nullity of juridical acts, upon commenting a judgment of the Supreme Court of Spain, Borell states as follows: "The judgment of June 30, 1931, declaring void a contract of sale in which there was no price, *a defect which it labels as false consideration,* says that the heirs of the vendor have (as did his predecessor in interest) a cause of action to challenge a simulated contract; and it should be noted in this case that the vendor was undoubtedly responsible for the cause of the nullity of the contract, which was no obstacle to the granting to him of an action of nullity, which he transmitted by reason of his death to his heirs." See Antonio M. Borell y Soler, *Nulidad de los Actos Jurídicos según el Código Civil Español"* 103–04 (ed. by Casa Editorial Bosch, 1947).

The case is important because it establishes that the action of nullity by reason of false consideration—sale without price paid—should not be mistaken for the action of nullity by reason of torpid cause, second rule of § 1306 of the Spanish Civil Code (§ 1258 of our Code), for "it cannot be asserted that the vendor was the only guilty party, without the participation of the purchaser, but, on the contrary,

that both collaborated in the apparent creation of the contract simulatively entered into." 200 *Jurisprudencia Civil* 452–58, at 457 (*Repertorio de la Revista General de Legislación y Jurisprudencia*, Editorial Reus, S.A., 1932). The applicable section is, therefore, § 1213, according to which a contract without consideration is wholly void or nonexistent, and we already know that the essential characteristic of a void contract is that "it has no legal effect whatsoever as such . . . such a contract is deemed not to be executed under the law." *Guzmán* v. *Guzmán, supra, id.* Hence, the appropriate action would be an ordinary civil action of nullity together with the cancellation of the corresponding entries in the Registry. Judgment of June 30, 1931, of the Supreme Court of Spain, *supra.*

█ Irrespective of any hypothesis of concerted fraudulent action, since Carlos H. Ball, Jr. intervened in the alleged act of alienation between Flor de María Monserrate and Elías G. Lopés, and since he did not acquire directly from the person who appeared from the Registry to have a right to dispose of the property, it is clear that we cannot consider Ball, Jr. as a third-party mortgagee. Sections 27 and 34 of the Mortgage Law of Puerto Rico; *Lizardi* v. *Caballero*, 65 P.R.R. 77, 82–83 (Todd, Jr.) (1945); *Olmedo* v. *Balbín*, 69 P.R.R. 547, 551 (Snyder) (1949). As correctly argued by plaintiff's attorney, in acquiring this property as he did, Carlos H. Ball, Jr. "relied, not on the notarial public record of the registry, but on the private attestation of his record predecessor." The nullity of the previous sale reaches the subsequent conveyance.

The judgment appealed from will be reversed and another rendered sustaining the civil action of nullity and ordering the corresponding cancellations in the Registry of Property, with any other pronouncements the Superior Court of Puerto Rico, San Juan Part, may deem consistent with the terms of this opinion.